## ALLEN and others v. WILSON and others.[1]

(Circuit Court, N. D. Illinois. July 28, 1886.)

1. CORPORATION—STOCKHOLDER'S RIGHT TO SUE MANAGER.
   A stockholder of a corporation is not entitled to act for the corporation, and sue its manager for the correction of abuses, until after such stockholder has demanded the correction of such abuses from the managing body of the corporation. This is so, although the manager, who is arraigned, owns a majority of the stock of the corporation, and elects a majority of its board of directors.

2. CORPORATION—ESTOPPEL OF STOCKHOLDER BY ASSENT TO CORPORATE ACTS.
   A stockholder of a corporation is estopped to object to corporate acts which were performed with his knowledge and assent. The assent of the stockholder may be either express or implied by his silence for years.

In Chancery.

This is a suit in chancery, originally brought in the circuit court of Rock Island county, in the state of Illinois, and afterwards removed from the state court to this court. The complainants are Calvin H. Allen, a citizen of New York, and Lucian C. Jones, Henry C. Baldwin, and Warren Packard, citizens of Ohio, who sued for themselves and, generally, for other stockholders of the Banner Coal & Coal-oil Company, an Illinois corporation. The defendants are the corporation, and John H. Wilson, John Crubaugh, Edward D. Sweeney, William Jackson, William A. Ross, and several others, all stockholders in the corporation. The corporation was organized in 1865 under a charter granted by the Illinois legislature. The capital stock was $500,000, divided into 5,000 shares, of $100 each. It was issued as paid-up stock.

Complainants allege, that upon the organization of the corporation, Wilson held 1,167 shares of its stock; that since January, 1868, he has held a majority of its stock in his own name, or that of his agents; that, by means of the stock held by him, he has, since January, 1868, controlled all elections of directors; that he transferred stock without consideration to Sweeney, Jackson, Ross, (his son-in-law,) and others, that they might act as directors of the corporation; that such persons acted as directors and officers of the corporation at Wilson's request, and in his interest; that in 1868 Wilson caused himself to be elected president and superintendent, ousting defendant Crubaugh from the latter office; that since 1868 Wilson has controlled and managed all business of the corporation, has had possession of all its property, books, papers, and money, has received and controlled all its receipts, has borrowed and paid money as he saw fit, has omitted to elect officers from time to time, and in every way has managed and controlled its business; that Wilson has disbursed the money of the corporation without taking vouchers as required by the by-laws; that the by-laws have been almost, if not entirely, disre-

[1] Edited by Russell H. Curtis, Esq., of the Chicago bar.

garded; that the corporate books have been kept in a very imperfect manner; that in 1873 Wilson, while president and superintendent, arranged to lease a large part of the property of the corporation, *i. e.*, its coal mines, to himself and one Cable; that immediately thereafter Wilson resigned as president, and the board of directors executed the contemplated lease, under which he has acted ever since; that Wilson continued superintendent and manager, and as such leased to himself the surface land of the corporation at an inadequate rental, and continues so to do; that Wilson has made exorbitant charges against the corporation for his services; and that no dividend has ever been declared. Complainants pray for a cancellation of the leases made by the corporation to Wilson, and for an accounting.

Defendants allege that all allegations in the bill imputing wrong to Wilson, or the members of the board of directors, or a fraudulent control by Wilson, as a majority stockholder, are false; that Wilson had full authority to do what he did; that his authority was ratified from time to time by the board of directors; and that the acts of Wilson, at the time they were performed, were known and approved by the directors and stockholders, including complainants.

The evidence is conflicting. The facts are indicated by the allegations of the parties and opinion of the court.

*Osborn & Lynde* and *Henry Curtis*, for complainants.

*Geo. W. Kretzinger* and *E. D. Sweeney*, for defendants.

GRESHAM, J., (*orally*.) This suit is brought by the complainants, four stockholders, in right of the company, against the company and Wilson, who owns a majority of the stock, and all the other stockholders. It is brought upon the theory that Wilson fraudulently controlled the company to its injury, and for his own benefit, through a board of directors of his own selection, who were his mere creatures. No effort was made to induce the company to bring suit, or to call Wilson to account in any way for his alleged misdeeds. The only reason which is assigned for thus bringing the suit is the fact that Wilson owned a majority of the stock, and in that way controlled the board. It is claimed by the complainants that it would have been vain and fruitless to call upon the board to sue Wilson, and make him disgorge, when the board was his mere creature or instrument. It is true that Wilson owned a majority of the stock, and was thus able to elect a majority of the board of directors; but the evidence shows that the boards were always elected unanimously, and that the so-called "minority" voted for Wilson and those who are now denominated as his mere tools. The minority did this with knowledge of the facts which they now claim amounted to fraud on Wilson's part. The complainants should have demonstrated their inability to deal with Wilson through the board before bringing this suit in their own name in right of the company. The law does not presume that the board of directors, or a majority of them, will be

unfaithful because they were elected by a person owning a majority of the stock. The evidence in this case, fairly considered, does not justly warrant an imputation of dishonesty against those who composed the board at the time this suit was brought, or at any previous time. As already stated, the vote at the election of directors was always unanimous, and those stockholders who are now most active against Wilson in this suit voted with him at all times.

This suit cannot be maintained for other reasons. Wilson was president of the board of directors, and it is claimed by complainants that he resigned from the board, and transferred stock to his friends without consideration, to qualify them to act as directors, with a view of having the board thus constituted enter into a contract with himself prejudicial to the interests of the company. Sweeney, Jackson, and others, who are said to have received stock without consideration, were elected members of the board three years before the lease was executed, the so-called "minority" voting for them. The evidence does not indicate that at this time Wilson contemplated such a contract. After these parties were placed upon the board by Wilson, as his mere instruments, and to register his orders, as it is claimed by the complainants, this minority, including the complainants, with knowledge of what Wilson had done, and was still doing, either expressly assented to the action of the board or by their silence acquiesced in Wilson's acts and management. Crubaugh seems to have been the chief spirit in the so-called "minority." It may be fairly said he inspired this suit, although, for obvious reasons, he appears as defendant rather than complainant. Packard is the only one of the four complainants who testified as a witness, and he was a member of the board from July, 1878, to July, 1879, when the minority referred to constituted a majority of the directors. This was long after the lease which is now complained of had been executed. Packard knew what Wilson had done under the lease, and was still doing. Neither as a member of the board of directors, nor as a stockholder, did Packard, at any time or in any manner, indicate disapproval of the lease, or anything that Wilson had done under it. In fact, all of the complainants knew of the contract of lease, and were fully informed as to Wilson's action, and none of them ever said or intimated that the lease was injurious to the company's interest. During the year the so-called minority controlled the board, the correctness of Wilson's accounts was never challenged. Crubaugh caused a resolution to be adopted several years after the execution of the lease, ratifying it, and approving Wilson's action under it. Ross, secretary and treasurer, made a report to the board on July 22, 1879, showing the state of Wilson's accounts with the company, and Crubaugh expressed satisfaction with this report, and later again voted for Wilson, and the so-called "majority," as directors. The board, with knowledge of what Wilson had done, ratified the very things which are now objected to, and the stockholders, including the

complainants, either expressed their satisfaction with the lease and Wilson's management, or remained silent for years with knowledge of all the facts.

. . The case might be different if Wilson and his friends on the ·board had managed the affairs of the company without the knowledge of ·the complainants. It does not lie in the mouth of a stockholder to ·object to what the company has done, if the action which he complains of was taken with his knowledge and consent. He cannot be heard to complain that he has been injured by the doing of something which he knew of at the time, and expressly consented to, or, by long silence, acquiesced in. There is no innocent stockholder here. The affairs of the company were not conducted without the knowledge of the stockholders; there was no secret in the management. Whether or not Wilson's action was in all respects what it should have been, it was never challenged by a single stockholder, and it had the express approval of some, at least, of the so-called "minority."

· The company was organized to mine coal. It owned 1,700 acres of undeveloped coal lands, and it was without means to open mines, and make the property available. If the company had executed the lease to Wilson while he was a member of the board, and still president of it, this suit could not be maintained on the facts in the record. Such contracts, it is true, are viewed with suspicion, and scrutinized with great care; but, for anything appearing, it was, all things considered, for the benefit of the company. Whether it was or not, however, it would stand against all stockholders who expressly consented to it, or, with knowledge of all the facts, remained silent for years.

The bill is dismissed for want of equity.