## JULIUS J. OLSON v. WARROAD MERCANTILE COMPANY.[1]

### March 16, 1917.

### Nos. 20,188—(276).

**Facts.**

1. Defendant, a mercantile corporation, sold products to a telephone company and took stock in the telephone company in payment. Defendant is now sued to enforce the constitutional liability of a stockholder.

**Same.**

2. The evidence shows that the transaction was conducted on behalf of defendant by officers authorized to act for the corporation.

[1]Reported in 161 N. W. 713.

**Corporation — purchase of stock — estoppel.**

3. Since all the stockholders of the corporation acquiesced in the transaction for nearly five years, neither they nor the corporation can now be heard to say that the transaction was *ultra vires*.

Action in the district court for Marshall county by the receiver of the McMahan Telephone Company, insolvent, to recover $3,000 upon an assessment on 30 shares of stock of the insolvent corporation owned by defendant, pursuant to G. S. 1913, § 6646. The answer specifically denied that defendant was the owner of any shares of stock of the insolvent. The case was tried before Grindeland, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. From an order denying its motion for judgment notwithstanding the decision or for a new trial, defendant appealed. Affirmed.

*Alexander Fosmark* and *Durment, Moore, Oppenheimer & Haupt,* for appellant.

*Charles Loring, G. A. Youngquist* and *Alfred Halvorson,* for respondent.

HALLAM, J.

1. The Warroad Mercantile Company was incorporated in 1905. By its articles of incorporation it was authorized to carry on a general mercantile business and to buy, sell and deal in lands and personal property. Its place of business is Warroad, Minnesota. In 1909, there were four stockholders, Thomas Lawson, C. E. Carlquist, and a man named Larson, a clerk for the company, all residing at Warroad, and John S. Lawson, residing in Milwaukee. John S. Lawson was president, Carlquist vice president, and Thomas Lawson secretary and treasurer. These three constituted the board of directors. The company carried on a store at Warroad and operated to some extent in poles, posts and other forest products. Carlquist had most of the actual management of the business of the company and had exclusive charge of the "timber business." The board of directors were scheduled to meet semiannually, but for the most part the business of the company was done by Carlquist after consulting with the other officers and stockholders.

In August, 1909, the McMahan Telephone Company was organized at

Stephen, Minnesota, and was proposing to run a line from Thief River Falls to Warroad. This company proposed to Carlquist, as representative of the Warroad company, that the Warroad company sell to it near $3,000 worth of telephone poles and take stock in the telephone company for the price. Carlquist took the matter up with all the stockholders of his company. It seemed desirable to them that this telephone line be extended to Warroad, and Carlquist obtained the consent of all the stockholders and the sale was made. His communication with John S. Lawson was by mail. The poles were delivered and the stock issued to Carlquist for the Warroad company and a certificate of stock delivered. After the transaction was done, John S. Lawson was in Warroad and the matter was again talked over. In January, 1911, Carlquist had the stock transferred on the books of the telephone company to the mercantile company and it stood in its name thereafter. In April, 1914, proceedings were commenced to dissolve the corporation. Plaintiff was appointed receiver, and later brought this action to recover from defendant the constitutional double liability of a stockholder. The case was submitted to the court without a jury. The court found for plaintiff. Defendant appeals.

Defendant contends, first, that defendant never purchased the stock, and, second, that the purchase, if made, was an *ultra vires* act.

2. Were there no question of *ultra vires* in the case, it could not be questioned that the purchase of this stock was a corporate act. It was done in the same manner as most of the important business of this corporation was done. Where the stockholders of a corporation, either by direct act or acquiescence, invest the executive officers of the company with general corporate power, the acts of such officers, done within the scope of such power, are the acts of the corporation. Gross Iron Ore Co. v. Paulle, 132 Minn. 160, 156 N. W. 268.

3. The second contention is that the purchase of stock in the telephone company was *ultra vires* and that, as a result, the liability of defendant as a stockholder cannot be enforced. We will assume that the taking of the stock was *ultra vires*. Still, we think the defendant and its stockholders cannot at this time avoid the consequences of ownership of this stock on that ground.

Hunt v. Hauser Malting Co. 90 Minn. 282, 96 N. W. 85, was a similar

action. The facts were much the same as here, with the added fact that the defendant stockholder corporation had received dividends on its stock. It was held that the defendant was liable to respond to the stockholders' constitutional liability. . The fact that dividends had been received was important, but it was not the determining factor in the case.

It has long been the rule in this state that, where a corporation has received the consideration coming its way under an *ultra vires* contract, it is estopped to assert that the contract was *ultra vires* when the obligation it assumed under the contract is asserted against it. Central Building & Loan Assn. v. Lampson, 60 Minn. 422, 62 N. W. 544; Erb v. Yoerg, 64 Minn. 463, 67 N. W. 355. This is in accordance with the general principle that where a contract, not contrary to law or public policy, has been fully executed on either side and the party so executing on his part is suing to recover the agreed consideration therefor, the other party will not be allowed to set up the defense that the corporation had no power to enter into the contract. 3 Thompson, Corporations, § 2787; Day v. Spiral Springs Buggy Co. 57 Mich. 146, 23 N. W. 628, 58 Am. Rep. 352; Whitney Arms Co. v. Barlow, 63 N. Y. 62, 69, 20 Am. Rep. 504; Shawnee Nat. Bank. v. Purcell Wholesale Grocery Co. 34 Okla. 34, 124 Pac. 603, 41 L.R.A.(N.S.) 494; Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 11 L.R.A.(N.S.) 921.

Whatever might be the right of a dissenting stockholder in such a case need not be considered, for there was no dissenting stockholder. All assented to this contract and acquiesced in it for nearly five years. On well-settled and salutary principles of law, the stockholders cannot, after authorizing or acquiescing in a contract, have the same avoided on the ground that it was *ultra vires*. 3 Thompson, Corporations, §§ 2048, 2846; McCampbell v. Fountain Head R. Co. 111 Tenn. 55, 77 S. W. 1070, 102 Am. St. 731; Boyce v. Montauk Gas Coal Co. 37 W. Va. 73, 16 S. E. 501; Allen v. Wilson (C. C.) 28 Fed. 677; Thompson v. Lambert, 44 Iowa, 239; Jordan & Co. v. Collins & Co. 107 Ala. 572, 18 South. 137; Watts Mercantile Co. v. Buchanan, 92 Miss. 540, 46 South. 66; Bissell v. Michigan S. & I. R. Co. 22 N. Y. 258; Camden & A. R. Co. v. May's Landing & Egg Harbor C. R. Co. 48 N. J. Law, 530, 7 Atl. 523; Dimpfell v. Ohio & M. Ry. Co. 110 U. S. 209, 3 Sup. Ct. 573, 28 L. ed. 121.

A corporation is but an aggregation of stockholders. They are the parties interested in its contracts. Whatever will estop all the stockholders will estop the corporation itself. 2 Thompson, Corporations, § 1985; Breslin v. Fries-Breslin Co. 70 N. J. Law, 274, 58 Atl. 313; Butterworth & Lowe v. Kritzer Milling Co. 115 Mich. 1, 72 N. W. 990. If the stockholders would repudiate the act of their officers, they must act with promptness, or at least within a reasonable time. The circumstances of delay may be such as to give rise to an equitable estoppel (Stewart v. Erie & W. T. Co. 17 Minn. 348 [372]), but it is not necessary that there should be facts sufficient to create a technical estoppel. It is only necessary to say this: The doctrine of *ultra vires* is calculated to protect, first, the interest of the public that the corporation shall not transcend the powers granted to it, and, second, the interest of the stockholders that the capital shall not be subjected to the risk of enterprises not contemplated by the articles of incorporation and therefore not authorized by the stockholders in subscribing for the stock. Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. Bridge Co. 131 U. S. 371, 384, 9 Sup. Ct. 770, 33 L. ed. 157. The interest of the public is to be conserved by the state and not by the individual stockholder. The right of the stockholder himself to object for the protection of his own interest may be lost by his own consent or acquiescence, for "it does not lie in the mouth of a stockholder to object to what the company has done, if the action which he complains of was taken with his knowledge and consent. He cannot be heard to complain that he has been injured by the doing of something which he knew of at the time, and expressly consented to, or, by long silence, acquiesced in." Allen v. Wilson, 28 Fed. 677, 680; 2 Thompson, Corporations, 1981.

The following decisions are pertinent. In Gilman v. Druse, 111 Wis. 400, 409, 410, 87 N. W. 557, a member in a mutual insurance company resisted liability on an assessment to pay losses for hail insurance on the alleged ground that hail insurance contracts were *ultra vires*. It was held that, having accepted a policy of hail insurance himself, he was in no position to assert this defense. In Watts Mercantile Co. v. Buchanan, 92 Miss. 540, 46 South. 66, it was held that a corporation which had purchased shares of stock in another corporation could not hold the

shares and resist payment of the note on the ground that the transaction was *ultra vires*.

Order affirmed.