## WILLIAM ALFRED v. GREAT NORTHERN FLOUR MILLS COMPANY.[1]

June 1, 1923.

No. 23,373.

**Plaintiff entitled to amount reserved from his salary to pay for stock.**

1. Plaintiff was employed as superintendent of defendant's mill in 1917 and discharged in 1921. A specified part of his salary had been applied by defendant, each month, on the purchase price of 50 shares of stock which defendant's manager had caused to be transferred to him by the holders thereof. Plaintiff seeks to recover the part of his salary so applied on the ground that defendant had agreed, as a part of the contract of hiring, to cause this stock to be transferred to him to be paid for by applying thereon the specified part of his salary, and had further agreed that, if his employment should be terminated before the stock was fully paid for, defendant would repay him all that he had paid thereon. *Held* that the verdict for plaintiff is sustained by the evidence.

**After performance by plaintiff defendant cannot avoid performance of contract.**

2. The contract having been performed on plaintiff's part and defendant having knowingly received the benefit of it. defendant cannot avoid performance on its part even if the contract was unauthorized or ultra vires.

[1]Reported in 194 N. W. 15.

Testimony properly excluded.

    3. Testimony that a director had no knowledge of the contract in respect to the stock was properly excluded.

Action in the district court for Stearns county to recover $2,074.70 with interest. The answer denied that defendant ever agreed to sell any of its stock to plaintiff. The case was tried before Roeser, J., who when plaintiff rested denied defendant's motion to dismiss and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $2,341.65. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*R. B. Brower*, for appellant.

*J. D. Sullivan*, for respondent.

TAYLOR, C.

During the time here in question W. A. Thomas was vice-president and managing director of defendant company, and, as he expressed it, "ran the business of the company." It seems that defendant had an office in the city of Minneapolis and also at its flour mill in the city of St. Cloud, and that Thomas lived in Minneapolis and spent the greater part of his time at the Minneapolis office. C. E. Roseth, mentioned later, was secretary and treasurer of the company and one of its directors. Plaintiff entered the employ of defendant in the early part of 1916, and a few months later became superintendent of its flour mill at St. Cloud. Having been offered a position with another company at an increase in pay, plaintiff informed Thomas in November, 1917, that he intended to resign. He was then receiving a salary of $166 per month. This was during the war when wages were rising rapidly and skilled men were difficult to obtain.

Thomas, who was in Minneapolis, came to St. Cloud and made an oral contract with plaintiff by which it was agreed that plaintiff should continue as superintendent of the mill at a salary of $3,000 per year payable monthly, and should purchase 50 shares of the capital stock of the company, of the par value of $5,000, at 75 cents

on the dollar, and should pay the purchase price by applying thereon $500 of his yearly salary in monthly instalments together with the dividends that should be declared on the stock. It was agreed that the contract should go into effect on December 1, 1917. Defendant had no capital stock which it could sell for less than par, and Thomas arranged to have his wife and Roseth each turn over to plaintiff 25 shares of their stock. Shortly after the making of the contract two promissory notes for the purchase price of the stock, dated December 1, 1917, each for the sum of $1,875 and bearing interest at the rate of 6 per cent per annum, one payable to Mrs. Thomas and the other to Roseth, were executed by plaintiff. To each note was pinned a certificate for 25 shares of stock assigned in blank but retained with the note as collateral security for its payment. Plaintiff continued as superintendent of the mill under this contract from December 1, 1917, until August 1, 1921, on which date he was discharged. From December 1, 1917, to June 1, 1921, defendant, each month, paid to plaintiff $208.33 of his salary and to Mrs. Thomas and Roseth $41.67 thereof which was indorsed in equal amounts on the two notes given by plaintiff.

Defendant's storage elevator burned and the mill was shut down in May, 1921. About June 1, 1921, Thomas notified plaintiff that, beginning June 1, his salary would be only $150 per month while they were rebuilding the elevator. Plaintiff refused to accept the reduction, and as a result of the ensuing controversy he was discharged to take effect August 1, 1921. Defendant paid him only $150 for each of the months of June and July. The facts above stated are undisputed. But defendant disputes plaintiff's further claim that as a part of the contract defendant, through Thomas, agreed that if plaintiff's employment should be terminated before the stock was fully paid for defendant would repay him all that he had paid thereon and take the stock off his hands. The following is an excerpt from plaintiff's testimony relating to this matter:

"He (Thomas) says, 'I have two propositions to offer you. One of them is a straight salary of $3,000 per year, and the other is a salary and a stock proposition. That is, we will give you $2,500 drawing account and $500 to apply on stock until the stock is paid for.' I

says to him, 'How about the salary after this stock is paid for?' And he says, 'You will never be cut.' I says, 'Supposing something should happen that I will have to leave here before this stock is paid for, what becomes of the stock?' And he says, 'We will pay you back every dollar that you put in on stock.' I says, 'Under that arrangement I would accept the stock proposition,' and he says, 'That is fine.' And he says, 'Now we can go ahead and make money and you will be one of us and you will never have to move.'" Paper Book, page 14.

After his discharge, plaintiff demanded payment of the part of his salary which had been applied on the stock, and of the balance claimed to be due for the months of June and July. Defendant refused to pay these amounts and plaintiff brought suit to recover them. The trial resulted in a verdict for plaintiff, and defendant appeals from an order denying a new trial.

Defendant contends that the evidence does not sustain the finding that the agreement in respect to the stock was made with defendant as a part of the contract of hiring. Defendant does not really contend that the evidence is insufficient to sustain a finding that the alleged agreement in respect to the stock was made, but contends that this agreement was not between plaintiff and defendant, but was between plaintiff on one side and Mrs. Thomas and Roseth on the other. In support of this contention defendant urges that the stock for which plaintiff contracted belonged to Mrs. Thomas and Roseth; that his notes for the purchase price were payable to them; that defendant had no stock which it could sell for less than par; and that defendant paid the full amount of plaintiff's salary each month, paying $208.33 to plaintiff and the remainder to Mrs. Thomas and Roseth.

Plaintiff asserts that all his negotiations were with Thomas as manager of defendant; that he had no dealings with either Mrs. Thomas or Roseth; that, to induce him to remain as superintendent of the mill, Thomas made the proposition to increase his salary to $3,000 per year, to give him 50 shares of stock at 75 cents on the dollar to be paid for by applying thereon $500 of his yearly salary, with a provision that, if his service terminated before it was fully

paid for, the stock should be taken off his hands and all that he had paid thereon should be repaid to him; that Thomas stated that he would turn over 25 shares of his own stock and have Roseth turn over 25 of his; that thereafter Thomas presented the promissory notes for his signature and he signed them; that he never had possession of the stock; and that defendant, without any authority or direction from him other than that contained in the original contract of hiring, applied $41.67 of his salary on the purchase price of the stock each month.

The evidence justified the jury in finding that the agreement concerning the stock was a part of the contract of hiring, and that plaintiff, on being discharged, had the right to rescind that agreement and recover the part of his salary which had been applied thereon.

Defendant further contends that neither Thomas nor defendant itself had authority to make such a contract. Thomas was managing director of the company and apparently transacted all its business. He made the contract with plaintiff for and on behalf of defendant. Under it defendant received the benefit of plaintiff's services for three years and eight months, and must be deemed to have had knowledge of the particular provision now in controversy for it applied plaintiff's salary in accordance therewith for more than three years with no authority therefor except that provision. Under such circumstances defendant is not in position to deny the authority of Thomas or to assert that the contract was ultra vires.

"It has long been the rule in this state that, where a corporation has received the consideration coming its way under an ultra vires contract, it is estopped to assert that the contract was ultra vires when the obligation it assumed under the contract is asserted against it." Olson v. Warroad Mercantile Co. 136 Minn. 310, 313, 161 N. W. 713.

This is not a case of an executory contract. The contract has been performed on plaintiff's part. Defendant has knowingly received the benefit of it and cannot now avoid the liability imposed by it whether the contract was or was not binding when made. 1 Dunnell, Minn.

Dig. § 2026; Olson v. Warroad Mercantile Co. 136 Minn. 310, 161 N. W. 713; Gasser v. Great Northern Ins. Co. 145 Minn. 205, 176 N. W. 484; The Independent Harvester Co. v. Malzohn, 147 Minn. 145, 179 N. W. 727.

Defendant urges as error a ruling excluding the testimony of a director to the effect that he had no knowledge of the agreement with plaintiff in respect to the stock. The ruling was proper under the facts of this case.

Order affirmed.