# DIMPFELL & Another *v.* OHIO & MISSISSIPPI RAIL- WAY COMPANY & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Argued November 28th, December 3d, 1883.—Decided January 21st, 1884.

### *Corporations—Equity.*

In order to give a standing in a court of equity to a small minority of stock-holders contesting as *ultra vires* an act of the directors against which a large majority makes no objection, it must appear that they have exhausted all the means within their reach to obtain redress of their griev-ances within the corporation itself, and that they were stockholders at the time of the transactions complained of, or that the shares have devolved on them since by operation of law.

*Mr. Charles W. Hassler* opened for appellants.

*Mr. Edgar M. Johnson* for Farmers' Loan & Trust Company, appellee.

*Mr. B. Harrison* for same.

*Mr. Thomas N. McCarter* closed for appellants.

MR. JUSTICE FIELD delivered the opinion of the court.

This suit was brought to set aside the contract by which the Ohio and Mississippi Railway Company became the owner of a portion of its road known as the Springfield Division, and to obtain a decree from the court declaring that the bonds issued by the company, and secured by a mortgage upon that division, are null and void. It was commenced by Dimpfell, an individual stockholder in the company, who stated in his bill, that it was filed on behalf of himself and such other stockholders as might join him in the suit. Callaghan, another stockholder, is the only one who joined him. The two claim to be the owners of fifteen hundred shares of the stock of the company. The whole number of shares is two hundred and forty thousand. The owners of the balance of this large number make no complaint of the transactions which the complainants seek to annul.

And it does not appear that the complainants owned their shares when these transactions took place. For aught we can see to the contrary, they may have purchased the shares long afterwards, expressly to annoy and vex the company, in the hope that they might thereby extort, from its fears, a larger benefit than the other stockholders have received or may reasonably expect from the purchase, or compel the company to buy their shares at prices above the market value. Unfortunately, litigation against large companies is often instituted by individual stockholders from no higher motive.

But assuming that the complainants were the owners of the shares held by them when the transactions of which they complain took place, it does not appear that they made any attempt to prevent the purchase of the additional road, and the issue by the company of its bonds secured by a mortgage on that road. We are not informed of any appeal by them to the directors to stay their hands in this respect, nor of any representation to them of a want of power to make the purchase and issue the bonds, nor of any probable injury which would arise therefrom. The purchase was made in January, 1875, and this suit was not commenced until September 12th, 1878. In the meantime the new road purchased was operated as an integral part of the line of the Ohio and Mississippi Railway Company, without objection from any stockholder. During these three years and eight months the earnings of the new road went into the treasury of the company, and the bonds issued upon the mortgage of that road, executed by the company in payment of its purchase, passed into the hands of parties who bought them on the faith of contracts which had been carried out without complaint from any one. Objections now come with bad grace from parties who knew at the time all that was being done by the company, and gave no sign of dissatisfaction. The purchase and the issue of the bonds were public acts known to them, and presumably to all the stockholders.

A stockholder must make a better showing of wrongs which he has suffered, and also of efforts to obtain relief against them, before a court of equity will interfere and set aside the trans-

actions of a railway company or of its directors. It is not enough that there may be a doubt as to the authority of the directors or as to the wisdom of their proceedings. Grievances, real and substantial, must exist, and before an individual stockholder can be heard he must show, in the language of this court, that "he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances or action in conformity to his wishes." *Hawes* v. *Oakland,* 104 U. S. 450.

In that case the court added that the efforts to induce such action as he desired on the part of the directors or of the stockholders, when that was necessary, and the cause of his failure, should be stated with particularity in his bill of complaint, accompanied with an allegation that he was a stockholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law.

According to the rule thus declared, and its value and importance are constantly manifested, the complainants have no standing in court, and the demurrer was properly sustained for want of equity in the bill.

This view renders it unnecessary to consider whether, as held by the court below, the railway company had the right to acquire the Springfield Division and to execute the mortgage and issue the bonds mentioned by virtue of the legislation of Illinois.

The complainants have not shown any ground which would justify the Court, on this application, to inquire into the validity of the transaction.

*Decree affirmed.*