## MULLINS v. DE SOTO SECURITIES CO.
### Inc., et al.
### No. 257.

District Court, W. D. Louisiana,
Shreveport Division.

Nov. 15, 1943.

Eugene A. Nabors, of New Orleans, La., and Pyburn & Pyburn, of Shreveport, La., for plaintiff.

Clyde R. Brown, of Monroe, La., and L. E. Colvin, of Mansfield, La., for defendants.

PORTERIE, District Judge.

We are now ruling on the motion to strike and the motion to make more definite in this case. The court has to bear in mind that which it said previously in 45 F.Supp. 871, and what the Court of Appeals, Fifth Circuit, has said in the case on appeal in 136 F.2d 55, 56.

That which must be meticulously obeyed as having been said by the Circuit Court is the following: "For assuming that the district judge was right in his holding that ownership of the stock at the time the matters complained of occurred is an essential to the maintenance of plaintiff's suit, it cannot be said from an inspection of plaintiff's petition as amended that plaintiff was not the owner of the stock at the time when at least some of the matters complained of occurred. Without, therefore, undertaking to determine whether, as appellees claimed and the district judge held, the rule set out in Rule 23(b), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, applies to a suit brought in the state and removed to the federal court, or whether, as claimed by appellees, it does not, the judgment will be affirmed as to Federal Deposit Insurance Corporation, individually, and reversed as to all other appellees, and the cause remanded for further and not inconsistent proceedings."

First to be culled from the District Court opinion is the following quotation [45 F.Supp. 878]: "We must be definite and final at this time on the point. First, under the cases of United Electric Securities Co. v. Louisiana Electric Light Co. et al., C.C., 68 F. 673, 675, and Von Schlemmer v. Keystone Life Ins. Co., 121 La. 987, 46 So. 991, the Louisiana rule is clearly the same as the federal rule found in 23 (b) of the Rules of Civil Procedure. This being true, much debate is avoided, such as the argument that since the Federal

Rules can validly regulate only procedure, if the state law were different, the matter being one of substance, the federal courts would have to apply the state law by virtue of the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487; and additionally there would be the other question as to whether or not the requirement is not an equitable principle of substantive character as is developed in the case of Home Fire Ins. Co. v. Barber (Roscoe Pound, Commissioner), 67 Neb. 644, 664, 98 N.W. 1024, 60 L.R.A. 927, 108 Am.St.Rep. 716; Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827; former Equity Rule 94, promulgated Jan. 23, 1882, 104 U.S. IX; Dimpfel v. Ohio & Miss. R. Co., 110 U.S. 209, 210, 3 S.Ct. 573, 28 L.Ed. 121; see McQuillen et al. v. National Cash Register Co. et al., 4 Cir., 112 F.2d 877, 882, second paragraph of headnote (7–9)."

We now make the reasoning of the above quotation a part of this opinion; it follows, in our opinion, that the point brought out by the quotation from the Circuit Court that a decision must be made as to whether or not Rule 23(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, controls, has been and is disposed of, thus finally and definitely, by us. Hence, to repeat, we rule that in the absence of any variance between the federal rule and the rule of the state the "ownership of the stock at the time the matters complained of occurred is an essential to the maintenance of plaintiff's suit." Rule 23(b).

From the District Court opinion, at the top of page 879 of 45 F.Supp., we quote again:

"The court has not failed to notice the strong meaning and import of Section 13 (Louisiana) Act 250 of 1928, providing: 'Except as otherwise provided in the articles and referred to in the certificate of stock, each share shall be in all respects equal to every other share.'

"We have considered, too, how the principle of equality of shares has received approbation in cases in the lower federal courts, cited by plaintiff's counsel, as well as how support for the principle has come from some writers in law reviews. Shares, however, may still be equal, yet various holders of them, because of equities, may not be enabled to make equal use of them."

Accordingly, we shall have t    e, when we do reach the motion         ,

any allegations of plaintiff's petition as amended which refer to transactions prior to August 27, 1935, the date of purchase of the preferred stock by plaintiff.

■ The general rule is that a motion to make more definite is never granted when the movant is in the possession of the particulars and the information sought.

■ The situation in this case, however, is a peculiar one, and we believe we have a legally meritorious exception to the general rule. Out of the hundreds of transactions, the plaintiff should be made to specify which ones are to be the subject of her complaint. The type of action of the plaintiff—the corporate derivative action—is a special one, and the essence of such a complaint should compel the plaintiff to particularize.

■ The burden is on the plaintiff; only well-pleaded facts leading to the necessary legal conclusions to maintain the derivative action are to be accepted and considered.

We cannot subscribe to the theory that the plaintiff is to merely complain in general legal conclusions and that the burden then is to shift and the defendants are then to draft an answer in meticulous detail as to each and every one of the hundreds of transactions of the two corporations occurring during a period of eight years.

The labor placed upon plaintiff of having to search for and declare the transactions upon which her complaint rests is to a substantial degree reduced because of the several hundreds of interrogatories propounded by her as part of her original complaint and already answered by the defendants.

The legal means available to plaintiff under the Federal Rules of Civil Procedure to obtain the information are quite numerous. The defendants have not been recalcitrant and, we believe, will facilitate the plaintiff at every turn. Moreover, the defendants are in receivership and, consequently, their business is public.

In short, the three hundred and more interrogatories and answers already on file in this case and considered by us in ruling on the motion to dismiss disclose many and different transactions. It would be illogical to compel the defendant to explain each and every one of these transactions, when some, or many of them, may not be in the mind of the plaintiff as sources of com-

plaint. Walling v. West Virginia Pulp & Paper Co., D.C., 2 F.R.D. 416.

To exemplify the necessity of definiteness, we shall consider the articles of the petition.

In the first twenty-six articles of plaintiff's complaint there is sufficient definiteness; or the conclusions, without facts in support, need no elaboration, because they are not subject to dispute.

Plaintiff in Articles 27–32, both inclusive, says that the DeSoto Securities Company, Incorporated, has been damaged in excess of $50,000 by virtue of wrongful transfers of "worthless or semi-worthless notes" and other assets; in the further sum of $23,205.57 for wrongful transfers of bank stock from the Bank of Commerce to the DeSoto Securities Company, Incorporated; and also in the sum of $2,500 for wrongful transfer from the Bank to the DeSoto Securities Company, Incorporated, of preferred stock issued by the company. All is alleged in the general; nowhere in these articles or elsewhere in the petition is there a single transaction specified. There is no date, no amount, no name or any other identifying data given, except that the time of these supposed injurious transactions is fixed broadly between January 1, 1928, and October, 1936.

The answers to the interrogatories disclose a number of intercorporate transfers, all of which occurred prior to 1933. Defendants have no means of knowing whether it is some of these transfers, all of them, or others on which plaintiff intends to rely.

Now referring to Articles 33 and 34, plaintiff in Article 33 claims $5,220 as damages resulting from overcharge of rent from January 1, 1928, until October, 1936, of which amount Article 34 claims $1,470 was paid to the DeSoto Corporation from April 1, 1933, until October, 1936. We find only the pleader's conclusion and not a single detailed comparative fact.

Articles 35 to 37 refer to a loan which the Reconstruction Finance Corporation made to the DeSoto Securities Company, Incorporated, and allege damages in the sum of $10,000. The only averment of specific damages is for increased cost of bookkeeping and of fidelity bonds. It is not shown when the damage occurred or what amount is claimed for any particular period.

In Articles 38 to 40, no transfer of property is designated or identified as to description, date of sale, or price paid, in the general allegation of these articles that the DeSoto Securities Corporation was deprived of valuable mineral rights. The answers to the interrogatories disclose real estate transactions dated prior and subsequent to the year 1935. Which of these transactions is the plaintiff presenting for the consideration of the court and, consequently, to which of these transactions ought the defendants to answer? Plaintiff should be directed to be more definite.

In a reading of Article 41, immediately, because of its general language, the conclusion arises that here is a generalization made without a single fact to support it.

Articles 42 to 46 characterize certain business practices as being unsound, and a loss of "several thousands of dollars" through refinancing of loans with the Federal Land Bank and Home Owners Loan Corporation is indicated without a single specification of any particular transaction.

Since Articles 47 and 48 are mainly argumentative, no particulars are to be furnished.

Articles 49 to 51, besides being purely argumentative, should suffer expunction because of their being directed against the Federal Deposit Insurance Corporation, individually; by decree of this court, as affirmed by the Circuit Court, the Federal Deposit Insurance Corporation is out of this suit.

An overcharge for rent is alleged generally in Article 52, but no facts are given to indicate which property is involved, how much the rent actually charged was, how much less it should have been, and for what period of time the overcharge existed, and so on. This article, too, must be particularized, else it should suffer expunction under the motion to strike.

Articles 53 and 54 suffer from the same frailties as Articles 49 and 51, and the language there should be applied here.

The vagueness of the general terms contained in Articles 55 to 59 as to excessive charges for attorney's fees and auditors' expenses, and likewise the vagueness of the allegation that the receiver plans to levy a liquidating fee against the assets of the DeSoto Securities Company, Incorporated, will make this article fall under the motion to strike unless plaintiff can offer particulars.

Articles 60 to 73 are mainly and substantially argumentative and, therefore,

274

need not be particularized; but will remain for later consideration on the motion to strike.

We find only the conclusions of the pleader—therefore nothing but pure argument—in Articles 74 to 75. Unless the plaintiff were to elaborate this skeleton of logic with facts to support it, it must fall. Moreover, in these articles, since the Federal Deposit Insurance Corporation individually is no longer a party defendant in this case, these articles are quite infirm.

So, we sustain the motion to make more definite to the degree and in the particulars outlined in this opinion; and after the motion to make more definite has been answered by the plaintiff as delimited by this opinion, the court will then pass on the motion to strike.

No formal order, further than this opinion, is needed. Let plaintiff have as long as sixty days, if needed, to comply. Rule 12(e).