Ruth COHEN, Plaintiff,

v.

Ephraim BLOCH, Joseph Vitale, Alvin L. Levine, Albert Bloch, Harry Fishlow, Fred G. Little and PRF Corporation, Defendants.

No. 78 Civ. 3909 (RWS).

United States District Court, S. D. New York.

Dec. 1, 1980.

Garwin & Bronzaft, New York City, for plaintiff; Sidney L. Garwin, Bruce E. Gerstein, New York City, of counsel.

Fink, Weinberg, Fredman, Berman & Lowell, P. C., New York City, for defendants Ephraim Bloch, Joseph Vitale, Alvin L. Levine, Albert Bloch, Harry Fishlow; Arthur C. Fink, Charles M. Newman, New York City, of counsel.

Martin J. Bluestein, New York City, for defendant PRF Corp.

OPINION

SWEET, District Judge.

The defendant PRF Corporation ("PRF") and the individual director-defendants Ephraim Bloch, Chairman of the Board and Chief Executive Officer ("Bloch") and five other persons comprising the complete PRF board ("the directors"), have moved to dismiss the amended and supplemental complaint in this shareholder derivative suit for failure of the plaintiff Ruth Cohen (the "shareholder" or "derivative plaintiff") to fulfill the requirements of Rule 23.1 of the Fed.R.Civ.P. The motions presumably were made under Fed.R.Civ.P. 12(c); material in addition to the pleadings has been offered

by both parties and considered.[1] The directors have also moved for protective relief from discovery under Fed.R.Civ.P. 26, and the shareholder has cross-moved to compel discovery under Fed.R.Civ.P. 37. For the reasons stated, the motions to dismiss the complaint are granted, thereby mooting the motions relating to discovery.

The history of this and related litigation is relevant to the disposition of the instant motions. This controversy had its genesis with the approval of a recapitalization proposal by the PRF Board of Directors (the "Board") in 1975. Under the proposal presented to shareholders in advance of the June 26, 1975 annual meeting, the number of authorized common shares would be increased and PRF's two-class stock structure revised by the elimination of all Class A shares and the issuance for each such share of 20 shares of Class B common. Under the existing structure each Class A share was entitled to twenty votes compared to one vote per Class B share. The distribution ratio was also 20 to 1, while the two classes participated on a one-to-one basis with respect to dividends.

After the shareholders approved the recapitalization proposal, the Securities and Exchange Commission (the "S.E.C.") began investigating possible violations by PRF of the Securities Exchange Act of 1934 and the Proxy Rules promulgated thereunder in the dissemination of the 1975 proxy material. With the S.E.C. determined to commence an action based on its conclusion that the proxy material was false, misleading, and contained material nondisclosures, PRF entered into a consent decree (the "decree") on May 29, 1976. The decree invalidated Board-approved proposals concerning recapitalization and the amendment of a previous stock purchase agreement between Bloch and PRF set forth in the 1975 proxy material and ratified at the annual meeting, and prohibited PRF from disseminating any non-complying proxy materials in the future. Additionally, the decree provided that prior to any submission by the Board to the shareholders of any new recapitalization proposal affecting the rights of the Class B shareholders, or the submission of any plan to buy shares of stock from Bloch, PRF first had to notify this court of its intent and appoint a special agent satisfactory to the S.E.C., who would investigate the fairness to each class of PRF stockholders of any such proposals. Following investigation the special agent was to report to the court and to the S.E.C., and PRF was to include that report in any relevant proxy statement. PRF also was enjoined from converting any Class A stock into common stock or other securities unless the matter was submitted to the shareholders for approval and a majority of the votes cast by the holders of common stock who owned no Class A stock voted in favor thereof.

During the S.E.C. investigation in connection with the 1975 proxy material, a derivative action was commenced in this court against PRF and all of its officers and directors by Arline Bronzaft, the wife of the attorney for the present derivative plaintiff, alleging facts and causes of action essentially similar to those contained in the S.E.C. complaint. The Bronzaft action was dismissed as moot in light of the entry of the consent decree, on November 18, 1976. By agreement, counsel in the present action ("Bronzaft"), who also represented plaintiff therein, received a $37,000 fee in connection with the dismissal.

Desiring to pursue recapitalization, PRF held discussions with the S.E.C. in 1977 covering financial reporting requirements. By January, 1978, the Board had worked out for the shareholders a proposed exchange of 19 shares of common stock for each Class A share. Further discussions between PRF and the S.E.C. were held, and pursuant to the 1976 decree, a special agent was approved by the S.E.C. and retained to report on the overall fairness of the proposed recapitalization and related proxy materials. The special agent's report issued, and a summary thereof was contained in the PRF proxy materials sent out in

1. See *Brooks v. American Export Industries, Inc.,* 68 F.R.D. 506–509 (S.D.N.Y.1975); *Dopp v. American Electronic Laboratories Inc.,* 55 F.R.D. 151, 153 n.3 (S.D.N.Y.1972).

connection with the upcoming annual meeting on January 26, 1979.

On August 22, 1978, the shareholder, step-mother of Bronzaft's wife, filed the original complaint in this derivative action, challenging the Board's termination in 1977 of the 1968 agreement between Bloch and PRF by which PRF was to buy 80% of the Class A stock owned by Bloch at his death, for a price equal to the market value of 6½ shares of the common stock for each Class A share, with a maximum payment of $1,500,000. The complaint alleged that the termination of that agreement was effectuated with recourse to material inside information, in violation of § 10(b) of the Securities Exchange Act of 1934, and that it was unfair to PRF, constituting a gift and a waste of corporate assets.

Upon receipt of final S.E.C. comments, in mid-December, 1978 the proxy materials were sent out to PRF shareholders, including the derivative plaintiff and Bronzaft himself. Later that month a meeting was arranged between Bronzaft and counsel for the directors, to discuss resolution of the existing cause of action. During the lunch meeting which transpired in New York City on January 11, 1979, Bronzaft apparently raised the matter of possible settlement of "a second cause of action" he intended to inject into the litigation—respecting the new 1979 recapitalization proposal. Bronzaft declined to elaborate on the alleged omissions and misstatements in the recently disseminated proxy materials which would be the basis of the new claim, despite counsel's urging that he do so in order that corrective steps might be taken before the upcoming annual meeting. The recapitalization proposal was presented to and approved by the shareholders at that meeting on January 26, 1979, with 27% of the eligible Class B common shares opposed. At no time after receipt of the proxy materials did the shareholder or Bronzaft communicate anything further with respect to this matter, or make any claims or disclosures amounting to a "demand" pursuant to Fed. R.Civ.P. 23.1.

Subsequently, on May 17, 1979, this court granted the shareholder's motion of April 6 to file an amended and supplemental complaint containing an additional cause of action alleging material omissions and misstatements in the relevant 1979 proxy materials issued in December, 1978. The actionable wrongs alleged with respect to the proxy materials involve nondisclosure of the history of the Board's efforts to rescind the existing Bloch purchase agreement and amend it to Bloch's substantial financial advantage, the pendency of this and another derivative action challenging the alteration of the Bloch purchase agreement, and certain of the Board's activities and other facts relating to the proposed 19:1 recapitalization. As discovery progressed, on November 9, 1979, this court ruled that since the shareholder lacked adequate knowledge, her counsel Bronzaft could be deposed on matters relating to the commencement of the derivative action.

At his deposition Bronzaft testified that he and his law partner had promptly reviewed the proxy statement and additional materials received upon request from PRF, and determined that there were deficiencies sufficiently serious as to render void any shareholder vote which utilized such a proxy solicitation. He stated that he was very familiar with PRF and its activities—being a shareholder himself, and having maintained a file on the company at least since the institution of the previous derivative action initiated by his wife. Bronzaft also conceded that he had not called any of these alleged violations to the attention of the defendants before the recapitalization was acted upon at the January 26, 1979 shareholders' meeting or indeed, at any time before filing the amended complaint—stating specifically, in answer to a question as to whether he had disclosed the proxy infirmities then known to him at the January 11 lunch meeting: "No, I didn't. I certainly wasn't going to sit there and tell you how I could show you how it was wrong at the time."

It is alleged—and defendants do not dispute—that at all relevant times until January 26, 1979, Ephraim Bloch and his family

and related trusts owned or controlled 21.5% of the outstanding PRF common stock and 86.5% of the Class A stock, and therefore possessed some 65.5% of the voting power. In fact, the shareholder alleges that the director-defendants, comprising PRF's entire Board, together with their relatives owned approximately 99% of the Class A stock.

Defendants move to dismiss the entire action pursuant to Rule 23.1 on the basis that the present plaintiff is not a "fair and adequate representative," or alternatively to dismiss the second cause of action on the ground that the shareholder has failed to comply with the Rule 23.1 demand on directors requirement.

Rule 23.1 provides that

The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation . . . .

Defendants urge dismissal of the action on this ground, relying primarily on the proposition that the shareholder, in pursuing the second cause of action, has breached a fiduciary duty she owes to PRF and all its shareholders by virtue of her already existing role as a derivative plaintiff.

The authorities are not altogether clear on whether a minority shareholder in the role of derivative plaintiff takes on such a generalized fiduciary duty, or whether that shareholder necessarily represents—and thus has a fiduciary duty toward—only those similarly situated (*i. e.*, the other minority shareholders). *See Ross v. Bernhard,* 396 U.S. 531, 538–39, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970); *Davis v. Comed, Inc.,* 619 F.2d 588, 592–94 (6th Cir. 1980); *Papilsky v. Berndt,* 466 F.2d 251, 255–56 (2d

Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); *Sweet v. Bermingham,* 65 F.R.D. 551, 553 (S.D.N.Y.1975); *Albert Fried & Co. v. The Seeburg Corp.,* 1974–75 Trade Reg.Rep. (CCH) ¶ 94,969 at 97,351–352 (S.D.N.Y.1975); *Berman v. Thompson,* 403 F.Supp. 695, 698 (N.D.Ill. 1975); *Tasner v. Billera,* 379 F.Supp. 815, 826 (N.D.Ill.1974); *In re Kauffman Mutual Fund Action,* 56 F.R.D. 128, 135 (D.Mass. 1972), *aff'd,* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); *Shulman v. Ritzenberg,* 47 F.R.D. 202, 210–11 (D.D.C.1969); *Clarke v. Greenburg,* 296 N.Y. 146, 71 N.E.2d 443 (1947); 7A C. Wright & A. Miller, Federal Practice and Procedure, ¶ 1833 at 394–95 (1972). In any case, defendants claim additionally that the shareholder has violated her conceded duty toward the other minority shareholders, and thus is an inappropriate representative of the class. *See, e. g.,* 7A C. Wright and A. Miller, *supra,* at 395.

■ The "fair and adequate representative" inquiry focuses on the degree of certainty that a derivative plaintiff will vigorously prosecute the corporate claim in the interest of the minority stockholders.[2] This expresses a well-founded concern that once a derivative plaintiff litigates a cause of action on the merits, *res judicata* will bar subsequent suit. *See Phillips v. Tobin,* 548 F.2d 408, 413 (2d Cir. 1976); *Smith v. Allegheny Corp.,* 394 F.2d 381, 391 (2d Cir.), *cert. denied,* 393 U.S. 939, 89 S.Ct. 300, 21 L.Ed.2d 276 (1968); *Mayer v. Development Corp. of America,* 396 F.Supp. 917, 930 (D.Del.1975); Note: *Res Judicata* in the Derivative Action: Adequacy of Representation and the Inadequate Plaintiff, 71 U.Mich.L.R. 1042 (1973).

While no decision has been found, understandably, which has dealt with facts such

---

2. If . . . a rule might be synthesized it is: when a derivative plaintiff demonstrates to the court an intent and desire to vigorously prosecute the underlying corporate claim and when he has engaged competent counsel to assist in that endeavor then, absent either a conflict of interest which goes to the forcefulness of the prosecution or the existence of antagonism between the plaintiff and other shareholders arising

from differences of opinion concerning the best method of vindicating the corporate claim, the representation requirement of Rule 23.1 is met (footnote and citations omitted).

*Sweet v. Bermingham, supra,* at 554. *See also Albert Fried & Co. v. The Seeburg Co., supra; Jannes v. Microwave Communications, Inc.,* 57 F.R.D. 18, 23 (N.D.Ill.1972).

as these, there are a number of indications in this case that this shareholder cannot fairly and adequately represent the interests of those similarly situated.

■ The state of the shareholder's finances and personal commitment to this action are doubtful,[3] see *Kamens v. Horizon Corp.*, 81 F.R.D. 444, 446 (S.D.N.Y.1979); *Rogosin v. Steadman*, 71 F.R.D. 514, 519 (S.D.N.Y.1976); however, the Supreme Court has clearly instructed that, given an attorney who will vigorously prosecute the action, such concerns alone do not mandate dismissal. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). *See also Fischer v. International Tel. & Tel. Corp.*, 72 F.R.D. 170, 174 (E.D.N.Y.1976).

Other aspects of the shareholder's prosecution of this action, through present counsel, are more disturbing. Having represented his wife in the earlier derivative action and having been awarded a fee therefor, Bronzaft, himself a PRF shareholder and quite knowledgeable about the company, two years later commenced the instant action in which his wife's step-mother is the derivative plaintiff. The actions, including the second cause of action added to the instant complaint, concern related activities of the Board.

In *Sweet v. Bermingham, supra*, the court held that a shareholder derivative action would not be dismissed merely because the derivative plaintiff was the wife of an attorney in the firm which represented her. 65 F.R.D. at 556. To reach that result, the *Sweet* court distinguished *Stull v. Pool*, 63 F.R.D. 702 (S.D.N.Y.1974) and a line of cases finding that such a spousal or similar relationship would disqualify a plaintiff as the representative of a class, on the basis of the distinction between class and derivative actions. *Sweet v. Bermingham, supra*, at 553–54. The *Sweet* court then enunciated a standard to be applied in the derivative action setting. *See* note 2. The rationale of *Stull* and similar cases in the class action

context is that a plaintiff with a close familial relationship to counsel stands to benefit much more substantially from the legal fee awarded, even as part of a settlement, than from a share of any class recovery, and thus has a potential conflict of interest with other class members. *Id.* at 704. *See also Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977); *Dennis v. Saks & Co.*, 1975–2 Trade Cases ¶ 60,396 (S.D.N.Y. 1975). *Cf. Fischer v. International Tel. & Tel. Co., supra*, at 173–74.

The court in *Sweet* apparently concluded that such a potential conflict does not present a problem in a derivative action, since these suits cannot in any case be dismissed or compromised without the approval of the court and notice to the shareholders. *Id.* at 556. Of course, there are indeed differences in the nature of class and derivative actions, *id.* at 553–54, and yet there are similarities which relate to the instant determination. The court oversees dismissal or settlement, and the notification of shareholders under Rule 23 as well as under Rule 23.1. *See, e. g. Fischer v. International Tel. & Tel. Co., supra*, at 173; *Clark v. Cameron-Brown Co.*, 72 F.R.D. 48, 56–57 (M.D.N.C.1976); *Byrnes v. IDS Realty Trust*, 70 F.R.D. 608 (D.Minn.1976); *Ash v. Brunswick Corp.*, 405 F.Supp. 234, 248 (D.Del.1975); *Wechsler v. Steinberg*, Fed. Sec.Rptr. (CCH) ¶ 94,991 (E.D.N.Y.1975); *Dolgow v. Anderson*, 43 F.R.D. 472, 487–88 (E.D.N.Y.1968). Additionally, courts have noted that such judicial oversight is not a realistic substitute for enforcement of the fair and adequate representation requirement. *See Susman v. Lincoln American Corp., supra*, at 95; *Robinson v. Computer Servicenters, Inc.*, 75 F.R.D. 637, 644 (N.D. Ala.1976).

Further the instant case is clearly distinguishable from *Sweet* on its facts. The holding in *Sweet* was that:

[I]n the absence of any out-of-the ordinary circumstances ... a derivative action so commenced should not be dis-

**3.** The shareholder's deposition testimony indicates that she has been from the outset remarkably ill-informed with respect to this suit,

and perhaps unprepared to pay more than $2,000 or $2,500 to pursue it. Her expenses were represented to be $700 at this early stage.

missed. That plaintiff's husband is a member of the law firm which represents her, when such firm is otherwise competent and qualified to prosecute the claim, is not perceived as an absolute bar to the action and cannot be viewed as creating a conflict of interest of so serious or substantial a nature (if at all) as to require the disqualification of the plaintiff and the dismissal of this lawsuit.

*Id.* at 557.

■ The circumstances surrounding this action, and particularly Bronzaft's role in the litigation with PRF, certainly are out of the ordinary. The litigation history and family relationships tying Bronzaft to this action indicate that Bronzaft's interest as counsel is the real interest in question. While there is no cause to doubt Bronzaft's competence, his devotion to this suit, or his ability to advance costs, it appears for that reason that the shareholder is not a fair and adequate representative.

An additional indication of the nature of the interest in this action is that neither the shareholder, already having assumed the role of derivative plaintiff with respect to what is now fashioned the first cause of action, nor Bronzaft—who was quite knowledgeable on the affairs of PRF—made an attempt to seek relief from the Board before bringing the second cause of action relating to the 1979 proxy materials. *See* note 4. This constitutes a breach of the shareholder's fiduciary duty to those similarly situated.

Whether or not the defendants, who control PRF, have been acting for their own benefit and to the detriment of plaintiff and others similarly situated, it is not conceivably in the minority shareholders' interest to have been denied the possibility of the Board's reacting favorably to some or all of the plaintiff's complaints regarding the proxy materials. Regardless of what course is now in the best interests of the minority, certainly a shareholder vote based on proxy materials more complete and accurate, and thus more to plaintiff's satisfaction, would have been preferable to all concerned. Depletion of the corporate assets on litigation which could possibly have been avoided is to the advantage of none of the shareholders. *See Dimpfel v. Ohio & M. Ry. Co.*, 110 U.S. 209, 3 S.Ct. 573, 28 L.Ed. 121 (1884); *Bartels v. Newirth*, 22 Fed.R. Serv.2d 970, 973 (S.D.N.Y.1976); *Rosenfeld v. Schwitzer*, 251 F.Supp. 758, 762 (S.D.N.Y. 1966); *Liken v. Shaffer*, 64 F.Supp. 432, 442 (N.D.Iowa 1946).

Defendants having demonstrated the shareholder's failure to satisfy the Rule 23.1 fair and adequate representation requirement, the court need not address whether the demand on directors requirement is excused with respect to the second cause of action. Suffice it to say that there is serious doubt as to whether demand would be excused in the circumstances of this case.[4]

---

4. Fed.R.Civ.P. 23.1 also provides that the complaint in a shareholder derivative action shall allege

> with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority . . . and the reasons for his failure to obtain the action or for not making the effort.

This prerequisite to suit has been restated in the courts to mean that a demand on the directors is required unless allegations in the complaint demonstrate that such a demand would be a futile gesture. Courts have in the exercise of their discretion applied the demand requirement with varying degrees of stringency, *see* 3B Moore's Federal Practice, ¶ 23.1.19 (1980), however in this circuit the demand requirement is taken quite seriously. *Elfenbein v. Gulf & Western Industries*, 590 F.2d 445, 450–51 (2d Cir. 1979); *Brody v. Chemical Bank*, 517 F.2d 932, 934 (2d Cir. 1975); *Brooks*

*v. American Export Industries*, 68 F.R.D. 506, 510–511 (S.D.N.Y.1975). *See Hawes v. City of Oakland*, 104 U.S. 450, 460–61, 26 L.Ed. 827 (1882); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

Here, no demand was made with respect to either cause of action. Paragraph 30 of the amended and supplemental complaint, speaking to the first cause and incorporated by reference into the second, avers the futility of demand not only because the whole Board, controlled by Bloch, approved the decisions against which this action seeks redress, but because defendants all actually participated in those alleged wrongs with the aim of personally enriching Bloch and themselves. Defendants here attack the shareholder's failure to demand relief with respect only to the second cause of action—addressed to the 1979 proxy materials. While demand has been excused where control

The amended and supplemental complaint is dismissed. In accordance with Rule 23.1, the non-party shareholders must be notified of this dismissal. *Papilsky v. Berndt, supra,* at 256–59; *Rogosin v. Steadman, supra,* at 520. Submit judgment on notice, including suggestions with regard to the contents of an appropriate notice and the cost burden thereof.

IT IS SO ORDERED.

and/or self-interested participation on the part of an individual or most of the directors is alleged—as here—with specificity, *Cathedral Estates, Inc. v. Taft Realty Corp.,* 288 F.2d 85 (2d Cir. 1955); *Abbe v. Goss,* 411 F.Supp. 923 (S.D.N.Y.1975); *Dopp v. American Electronic Laboratories, Inc.,* 55 F.R.D. 151 (S.D.N.Y. 1972); *Cohen v. Industrial Finance Corp.,* 44 F.Supp. 491, 495 (S.D.N.Y.1942), on the unusual facts of this case it would appear that the shareholder does not make the demonstration necessary to effect a waiver of the demand requirement.

The crucial fact is, of course, that counsel for the shareholder concededly knew, upon receipt of the proxy materials in December, 1978, that there were misstatements and omissions which he considered actionable, and even that he would seek to add an appropriate cause of action to the existing derivative complaint. The January 11, 1979 lunch meeting, at which Bronzaft revealed his intention to add a cause of action, was one obvious opportunity to seek rectification. Yet neither he nor the shareholder did so at that or any other time before the allegedly fraudulent proxy materials were voted upon by all the shareholders at the January 26, 1979 annual meeting and the consequences of the alleged fraud thus sealed. Now, on the second cause of action, the complaint seeks rescission of shareholder ratification of proposals presented in those proxy materials.

A minority shareholder such as the derivative plaintiff does not assume responsibility for the dissemination of accurate proxy materials. However, this shareholder's attorney possessed unusually detailed knowledge of PRF through his involvement in this and a prior case, and his own status as a shareholder. Yet counsel and shareholder chose to sit back silently and allow other shareholders to act on the basis of the proxy materials believed to contain actionable wrongs.

As the Court of Appeals has stated:

> The very purpose of the 'demand' rule is to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.

*Brody v. Chemical Bank, supra,* at 934. In light of the recent history of the Board's efforts to recapitalize, which brought close S.E.C. oversight, the participation of a special master, and protracted litigation involving Bronzaft himself, it is far from obvious that a demand by the shareholder with respect to the 1979 proxy materials would have been ignored. Of course, there is no guarantee that such a demand would have brought the desired relief from directors who are all alleged to have personal stakes in the very activities challenged, but under such circumstances a shareholder should not be rewarded for silent acquiescence. *Dimpfel v. Ohio & M.R. Co.,* 110 U.S. 209, 3 S.Ct. 573, 28 L.Ed. 121 (1884); *compare Cathedral Estates v. Taft Realty Corp., supra.*